*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAKALIA MANAGEMENT, LLC,

      Plaintiff-Appellant,

v

OTSEGO COUNTY TREASURER and COUNTY OF OTSEGO,

      Defendants-Appellees.

UNPUBLISHED
January 21, 2026
9:41 AM

No. 361621
Otsego Circuit Court
LC No. 18-17383-CH

ON REMAND

Before: GADOLA, C.J., and PATEL and MALDONADO, JJ.

PER CURIAM.

At issue in this appeal is whether Kakalia Management, LLC has a compensable takings claim under Article 10, § 2 of the 1963 Michigan Constitution and/or a claim for unjust enrichment following a tax-foreclosure sale of its property under the former provisions of the General Property Tax Act (GPTA), MCL 211.1 *et seq.* Relying on *Rafaeli, LLC v Oakland Co,* 505 Mich 429, 477; 952 NW2d 434 (2020), we affirmed the trial court's order granting defendants' motion summary disposition under MCR 2.116(C)(10). *Kakalia Mgt, LLC v Otsego Co Treasurer*, unpublished per curiam opinion of the Court of Appeals, issued April 13, 2023 (Docket No. 361621) (*Kakalia I*), vacated by *Kakalia Mgt, LLC v Otsego Co Treasurer*, 25 NW3d 335 (Mich, 2025) (*Kakalia II*).

In lieu of granting leave to appeal, our Supreme Court vacated *Kakalia I* and remanded the case for our reconsideration in light of *Jackson v Southfield Neighborhood Revitalization Initiative*, __ Mich __; __ NW3d __ (2025) (Docket No. 166320) and *Yono v Co of Ingham*, __ Mich __; __ NW3d __ (Docket No. 166791). *Kakalia II*, 25 NW3d at 335. We vacate the trial court's judgment and remand to the trial court for further proceedings consistent with this decision.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

We provided the following summary of the underlying facts in *Kakalia I*:

> The underlying facts are not in dispute. In January 2012, Kakalia acquired a commercial property in Gaylord, Michigan known as the Royal Crest Motel or the Econolodge. Kakalia sold the property by land contract in June 2015, but the land contract vendee defaulted and forfeited its interest back to Kakalia in June 2017. On February 5, 2018, a judgment of foreclosure was entered on the property pursuant to the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, because Kakalia owed delinquent taxes, unpaid assessments, fees, penalties, and/or interest totaling $89,609.47. Kakalia failed to redeem its property, and the judgment of foreclosure became effective on April 2, 2018, which resulted in absolute title to the property vesting to the Otsego County Treasurer. See MCL 211.78g(2).

> The tax-foreclosed property was scheduled to be auctioned on August 13, 2018. On July 18, 2018, under the then-existing version of MCL 211.78m(1), the county exercised its statutory election right to purchase the property from the Otsego County Treasurer for a minimum bid amount of $89,609.47.[2] At the time of the foreclosure purchase, the tax-delinquent property was worth approximately $455,000 based on the facts alleged here.

> In August 2018, Kakalia filed a complaint to quiet title against the Otsego County Treasurer, alleging that it did not receive actual or proper notice of the tax-foreclosure proceedings. The trial court dismissed Kakalia's claim under MCR 2.116(C)(4), but Kakalia was afforded leave to amend its claim. Kakalia amended its claim to allege that the Takings Clause of the Michigan Constitution required the county to pay Kakalia just compensation equal to the fair market value of the property less the amount owed to the Otsego County Treasurer for delinquent taxes.

> Defendants moved to dismiss Kakalia's claim under MCR 2.116(C)(10), arguing that the sale of the property to the county did not yield any "surplus proceeds" and thus Kakalia had no right to recovery pursuant to *Rafaeli*. In response, Kakalia asserted that *Rafaeli* was inapplicable because (1) there was no "foreclosure sale" in the instant matter and (2) the taking in *Rafaeli* was the "common law property right to retain any surplus proceeds from a foreclosure sale," while the taking in the instant was the "real property itself." Relying on Justice Viviano's concurring opinion in *Rafaeli*, Kakalia asserted that the *Rafaeli* majority did not address whether a former property owner has a vested property right to equity held in the property.

> After initially denying the Otsego County Treasurer's motion for summary disposition, the trial court granted the motion after reconsideration:

>> The Michigan Supreme Court has held that one who loses a "property interest" through tax foreclosure has a common law right to any "surplus proceeds" actually realized by the government

through the sale of the property and that such right is protected [by] the Takings Clause of the Michigan Constitution. *Rafaeli, LLC v Oakland County*, 505 Mich 429, 470-3 (2020).

The plaintiff in this case challenges the sale of its former real estate after property tax foreclosure via direct sale by the Otsego County Treasurer to Otsego County for $89,609.47, which is the owing for unpaid real estate taxes. Although not binding precedent, the court is persuaded by the analysis of the United States District Court for the Eastern District of Michigan in *Hall v Oakland County Treasurer*, Case No. 20-12230 (ED Mich, May 21, 2021).[3] Consistent with the Hall courts [sic] reasoning, this court finds that defendant in this case is entitled to summary disposition pursuant to MCR 2.116 (C)(7) [sic].[4]

Thereafter, the court granted Kakalia leave to file a third amended complaint adding the county as a party defendant, adding a claim for unjust enrichment, and seeking a declaratory judgment to confirm its present legal interest in the surplus equity in the subject property. Contemporaneous with the order granting leave, the court granted summary disposition in favor of defendants under MCR 2.116(C)(10) as to all of Kakalia's claims asserted in the third amended complaint. This appeal followed. [*Kakalia I*, pp 2-3.]

---

[2] "Because of the property's proximity to the downtown County Building," the county maintained that it wished to retain the property "for potential County growth."

[3] After this appeal was filed, the Sixth Circuit Court of Appeals reversed the district court's dismissal of the *Hall* plaintiffs' takings claim under the U.S. Constitution, vacated the district court's dismissal of their takings claims under the Michigan Constitution, and remanded with instructions for the district court to abstain from adjudicating the takings claims under the Michigan Constitution. *Hall v Meisner*, 511 F4th 185, 196-197 (CA 6, 2022).

[4] The trial court subsequently amended its order to reflect that its holding was based on MCR 2.116(C)(10).

---

On appeal, Kakalia argued that its surplus equity interest in the tax-foreclosed property was improperly taken and that just compensation required that it be compensated for the fair market value of its property, less the tax liability owed (i.e., its pre-foreclosure equity in the property). We adopted the dicta stated in *Rafaeli* and affirmed the trial court's dismissal of Kakalia's takings claim. *Kakalia I*, p 6. Similarly, we concluded that the trial court did not err by dismissing Kakalia's unjust enrichment or declaratory judgment claims.

Our Supreme Court held Kakalia's application for leave to appeal in abeyance pending its decision in *Schafer v Kent Co* (Docket No. 164975). *Kakalia Mgt, LLC v Otsego Co Treasurer*, 1 NW3d 261 (Mich, 2024). Following the decision in *Schafer v Kent Co*, 515 Mich 1; __ NW 3d __ (2024), our Supreme Court held Kakalia's application in abeyance pending the decisions in *Jackson* and *Yono*. *Kakalia Mgt, LLC v Otsego Co Treasurer*, 12 NW3d 591 (Mich, 2024). After *Jackson* and *Yono* were decided, our Supreme Court vacated *Kakalia I* and remanded for our reconsideration in light of *Jackson* and *Yono*, in lieu of granting leave to appeal. *Kakalia II*, 25 NW3d at 335.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (cleaned up). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. Summary disposition should be granted when, after reviewing the evidence in the light most favorable to the nonmoving party, there are no remaining issues of material fact and the moving party is entitled to judgment as a matter of law. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016).

## III. ANALYSIS

"The United States and Michigan Constitutions dictate that before the government may take property for unpaid taxes, it must provide the property owner sufficient notice of the delinquency and foreclosure proceedings as well as an opportunity to contest those proceedings." Rafaeli, 505 Mich at 451, citing US Const, Am V; Const 1963, art 1, § 17. Michigan's Takings Clause provides, in relevant part:

> Private property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed by law. If private property consisting of an individual's principal residence is taken for public use, the amount of compensation made and determined for that taking shall be not less than 125% of that property's fair market value, in addition to any other reimbursement allowed by law. . . .

> "Public use" does not include the taking of private property for transfer to a private entity for the purpose of economic development or enhancement of tax revenues. Private property otherwise may be taken for reasons of public use as that term is understood on the effective date of the amendment to this constitution that added this paragraph. [Const 1963, art 10, § 2.]

"A 'taking' . . . means that the government has permanently deprived the property owner of any possession or use of the property without the commencement of formalized condemnation

proceedings." *Rafaeli*, 505 Mich at 454. "When such a taking occurs, the property owner is entitled to just compensation for the value of the property taken." *Id*. at 454-455. The *Rafaeli* Court concluded that a foreclosing governmental unit (FGU) violates the Takings Clause of the Michigan Constitution if it retains the surplus proceeds obtained in tax-foreclosure proceedings under the GPTA:

> [The] plaintiffs, former property owners whose properties were foreclosed and sold to satisfy delinquent real-property taxes, have a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties. . . . [Therefore, the] defendants' retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of plaintiffs' properties under Article 10, § 2 of our 1963 Constitution. [*Id*. at 484-485.]

The remedy for a government taking is "just compensation for the value of the property taken." *Id*. at 482 (cleaned up). However, the *Rafaeli* Court rejected the plaintiffs' argument that they were entitled to receive the fair market value of their foreclosed real property, which had been sold at a public auction. See *id*. at 481-484. Instead, the Court concluded that "just compensation requires the foreclosing governmental unit to return any proceeds from the tax-foreclosure sale in excess of the delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property—*no more, no less*." *Id*. at 483-484 (emphasis added). In *Schafer*, 515 Mich at 13, our Supreme Court held that *Rafaeli* applies retroactively to claims that were not yet final when *Rafaeli* was issued, which would include this case.

In this case, Kakalia's property was not sold at a public auction; instead the county exercised its statutory election to purchase the property from the Otsego County Treasurer, the FGU, for the minimum bid under MCL 211.78m(1), as amended by 2014 PA 501.[1] "Under former

---

[1] Under the former version of MCL 211.78m, the state had a "right of first refusal" to buy the foreclosed property "at the greater of the minimum bid or its fair market value." MCL 211.78m(1). The former MCL 211.78m defined a "minimum bid" as including "[a]ll delinquent taxes, interest, penalties, and fees due on the property" and "[t]he expenses of administering the sale[.]" MCL 211.78m(16)(a)(*i*) and (*ii*). If the state declined to purchase the property, the city, village or township in which the property was located could purchase the property by paying the FGU the "minimum bid." *Id.* And if the city, village or township declined, the county in which the property was located could purchase the property by paying the FGU the "minimum bid." *Id.* Otherwise, the foreclosed property would be sold by the FGU at public auction. MCL 211.78m(2). If a governmental body exercised its statutory right to purchase the property from the FGU before the public auction, the purchasing governmental body was free to sell the property. MCL 211.78m(1). But, under the former version of the GPTA, the property's former owner did not have a right to any of the surplus proceeds from the sale. See *Rafaeli*, 505 Mich at 447 (noting that the GPTA "does not provide for any disbursement of the surplus proceeds to the former property owner, nor does it provide former owners a right to make a claim for these surplus proceeds."). In response to *Rafaeli*, the Legislature substantively amended the GPTA. See 2020 PA 255, effective January 1, 2021, and 2020 PA 256, effective December 22, 2020. Relevant to this action, the Legislature amended the GPTA to require any governmental body that purchases tax-foreclosed

MCL 211.78m(1) and former MCL 211.78m(16)(a), there was no possibility of surplus proceeds from a foreclosure sale because the properties were never placed for public auction and the statute restricted the [governmental unit's] purchase amount upon exercise of its right of first refusal to the "minimum bid." *Jackson*, __ Mich at __; slip op at 11.

The *Jackson* Court extended the principles outlined in *Rafaeli* to cases where the property was not offered for sale at public auction and, instead, a governmental unit other than the state purchased a tax-foreclosed property from the FGU for the minimum bid under former MCL 211.78m(1). *Id.* at __; slip op at 11-14. The Court concluded that a minimum-bid transfer between governmental units under former MCL 211.78m constitutes a taking under the Takings Clause of the Michigan Constitution "if the value of the property retained exceeds what the government was owed." *Id.* at __; slip op at 12. But the Court "reaffirm[ed] the *Rafaeli* Court's rejection of the full fair market value of plaintiffs' properties as the appropriate measure of damages for a tax-foreclosure taking when a property was offered for sale at a public auction." *Id.* at __ n 5; slip op at 13 n 5, citing *Rafaeli*, 505 Mich at 483. Accordingly, to the extent that the value of Kakalia's property exceeded the amount that Kakalia owed in delinquent taxes and attendant fees, the government received a surplus value and thus there was a taking without just compensation in violation of the Michigan Constitution's Takings Clause. See *Jackson*, __ Mich at __; slip op at 13-14, 22.

MCL 211.78t, which was added by 2020 PA 256, outlines how a former property owner or other claimant may claim an interest in the remaining proceeds following a sale of foreclosed property and is the "exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under the laws of this state." MCL 211.78t(11).[2] Although MCL 211.78t

_____

property to pay the FGU "the greater of the minimum bid or the fair market value of the property." See MCL 211.78m(1), as amended by 2020 PA 255; *Jackson*, Mich at __; slip op at 15. However, MCL 211.78m, as amended by 2020 PA 255, does not apply retroactively to the foreclosure in this case, which occurred before the amendment's effective date. See *Jackson*, __ Mich at __; slip op at 19-22.

[2] MCL 211.78t(12)(b) defines "remaining proceeds" as

the amount equal to the difference between the amount paid to the foreclosing governmental unit for a property due to the sale or transfer of the property under section 78m and the sum of all of the following:

(*i*) The minimum bid under section 78m.

(*ii*) All other fees and expenses incurred by the foreclosing governmental unit pursuant to section 78m in connection with the forfeiture, foreclosure, sale, maintenance, repair, and remediation of the property not included in the minimum bid.

applies retroactively, it does not apply when a governmental unit has exercised its right of first refusal under former MCL 211.78m(1) and purchased the property from the FGU for the minimum bid. *Jackson*, __ Mich at __; slip op at 15-19.[3] Accordingly, the MCL 211.78t claims process is not applicable here. See *id*. at __; slip op at 18-19. Instead, Kakalia "should proceed through standard processes of inverse condemnation, separate from the statutory process of MCL 211.78t." *Id*. at __; slip op at 19.

## IV. CONCLUSION

The trial court erred by summarily disposing of all of Kakalia's claims asserted in its third amended complaint. Accordingly, we vacate the trial court's judgment and remand to the trial court for further proceedings consistent with this decision. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Sima G. Patel
/s/ Allie Greenleaf Maldonado

---

(*iii*) A sale commission payable to the foreclosing governmental unit equal to 5% of the amount paid to the foreclosing governmental unit for the property.

[3] The *Jackson* Court explained that MCL 211.78t did not provide the plaintiffs with any possibility of relief:

"remaining proceeds would be "the amount equal to the difference between the amount paid to the" FGU and the minimum bid. MCL 211.78t(12)(b). For each plaintiff, the amount paid to the FGU was the minimum bid, so the difference between these figures is zero. [*Jackson*, __ Mich at __; slip op at 19.]